Jo Ann LOMBARDI

v.

MARGOLIS WINES & SPIRITS, INC.

Civ. A. No. 78–988.

United States District Court,
E. D. Pennsylvania.

Feb. 2, 1979.

**100**

Michael L. Levy, Philadelphia, Pa., for plaintiff.

H. Ronald Klasko, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, District Judge.

This is a sex discrimination case filed under Title VII of the Civil Rights Act of 1964. It was originally brought in the Western District of Pennsylvania and was transferred on February 22, 1978 to this district, for the convenience of the parties and witnesses. Defendant now moves to dismiss for lack of subject matter jurisdiction.

Plaintiff was the only woman member of the sales force of defendant Margolis Wines & Spirits, Inc. (Margolis). In her amended complaint, she alleges that she was dismissed solely because she had complained to the defendant that her salary was some $400 per month less than that of her male colleagues who worked neither harder nor better than she.[1]

Plaintiff filed a claim with the Equal Employment Opportunities Commission (EEOC). The EEOC then referred her claim to the Pennsylvania Human Relations Commission (HRC). Less than two weeks later, at plaintiff's own written request, the HRC terminated the processing of her complaint. Plaintiff asserts by sworn affidavit that this request was made not of her own initiative, but at the direction and under the supervision of an employee of the EEOC. It further appears that there was in effect at that time an agreement between the HRC and the EEOC, which contained the following provisions for the allocation of cases between them:

> The EEOC will, except under special circumstances, refrain from administratively processing the charge if the PHRC desires to continue the administrative

---

1. Defendant contends, on the other hand, that the dismissal was for good cause, citing numerous instances of plaintiff's poor job performance. In the letter of dismissal, however, the only reason given for the dismissal is a reduction in the defendant's sales force.

process. If EEOC desires to process the charge, the appropriate PHRC Regional Office will be notified immediately in writing.

The question raised by the present motion is whether the plaintiff has, by her written request, so waived her right to an investigation by the HRC, contrary to Congress's desire that such matters first be processed by state agencies, as to deprive this court of subject matter jurisdiction.

 Under Title VII, the EEOC will not hear a complaint until the appropriate state administrative agency (here the HRC) has first had an opportunity to decide the case. 42 U.S.C. § 2000e–5(c). *See DuBois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972). Section 2000e–5(c) provides in pertinent part:

> (c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . .

Legislative history establishes that the purpose of this provision is to avoid "premature interference by the Federal Government" in disputes better suited to resolution at the state administrative level. *Bell v. Wyeth Laboratories, Inc.*, 448 F.Supp. 133, 135 (E.D.Pa.1978), *citing* Senator Humphrey Explanation of Titles VII and XI of Civil Rights Act of 1964, United States Equal Employment Opportunity Commission, page 3008. *See Dubois, supra* at 975; *Crosslin v. Mountain States Telephone and Telegraph Co.*, 422 F.2d 1028, 1030–31 (9th Cir. 1970); *Corne v. Baush & Lomb, Inc.*, 390 F.Supp. 161, 165 (D.Ariz.1975). It is generally accepted, therefore, that until a claimant has adequately pursued state administrative remedies—by waiting either the requisite 60 days or until the state agency has disposed of the claim—the federal courts are without subject matter jurisdiction over the dispute.

 As a result of the federal policy of deference to state administrative expertise contained in section 2000e–5(c), courts applying that section have attached primary significance to the wishes of the state agency. Virtually anything that the state agency does of its own initiative in order to be rid of a case may be sufficient to pass jurisdiction on to the EEOC via § 2000e–5(c), as long as the state agency had an *opportunity* for some period, however brief, to dispose of the matter. *See Barela v. United Nuclear Corp.*, 462 F.2d 149 (10th Cir. 1972) (state agency that returned case to EEOC without processing it, citing heavy workload, had been afforded requisite opportunity); *Bauman v. Union Oil Co.*, 400 F.Supp. 1021 (N.D.Cal.1973) (same); *Pacific Maritime Ass'n v. Quinn*, 465 F.2d 108 (9th Cir. 1972) (state agency that made only perfunctory efforts to process claim before returning case to EEOC had sufficient opportunity). Conversely, a complainant clearly cannot of her own initiative procure the termination of state agency proceedings and then claim that all state remedies have been adequately pursued. *See Rios v. Enterprise Ass'n Steamfitters*, 326 F.Supp. 198 (S.D.N.Y.1971). Thus, if the termination of the state investigation was in any way desired or implemented by the state agency itself, the requirements of § 2000e–5(c) have been met.

 In the present case, termination of the state investigation was brought about neither exclusively by the claimant nor exclusively by the state agency. Rather, plaintiff claims that the termination was brought about by the plaintiff, acting at the direction of the EEOC, pursuant to an agreement with the HRC. The question, therefore, is whether the HRC's indirect participation in the termination, through its agreement with the EEOC, constitutes sufficient opportunity to investigate, within

the meaning of § 2000e–5(c). I conclude that it does.

Had it not entered the agreement with the EEOC, the HRC would clearly have had an opportunity to decide Ms. Lombardi's claim. However, by signing the agreement, the HRC voluntarily relinquished that opportunity, as well as the opportunity to decide any other case that, for "special circumstances," the EEOC desired to process. This case therefore concerns a voluntary waiver of jurisdiction by the state agency, rather than the kind of jurisdictional usurpation with which Congress was concerned when it enacted § 2000e–5(c).[2]

Because the requirements of § 2000e–5(c) have been met, I hold that this court has subject matter jurisdiction over Ms. Lombardi's claim. To hold otherwise, when the plaintiff acted only at the direction of the EEOC and did nothing herself to short circuit the necessary investigative procedures, would defeat the overall purpose of the equal employment opportunities statute. It must be remembered that § 2000e–5(c), which protects the right of state agencies to first hear such cases, is but one provision in a major statutory scheme designed to protect not the rights of state agencies, but the rights of persons with legitimate claims of employment discrimination. It would indeed be counter-productive now to turn the plaintiff out of this court for heeding in good faith the advice of an employee of an agency created ostensibly for her own ultimate benefit.

### ORDER

It is ORDERED, for the reasons set forth in the accompanying memorandum opinion, that defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

2. It is true that the HRC did not know, at the time, that plaintiff's termination request was made at the direction of the EEOC pursuant to the agreement between the agencies. It is not necessary under the agreement, however, that the HRC know that the request originated with the EEOC rather than the claimant. It is suffi-

cient that the EEOC desired to process the claim and that the HRC was "notified immediately in writing" to terminate its investigation, so that there would be no unnecessary duplication of investigative efforts between the agencies.