Floreine J. COLLINS, Plaintiff,

v.

**MANUFACTURERS HANOVER TRUST COMPANY and Manufacturers Hanover Trust Company Retirement Plan, Defendants.**

No. 81 Civ. 1287–CSH.

United States District Court,
S. D. New York.

June 22, 1982.

Rochelle M. Corson, Emily Bass, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C., New York City, for plaintiff.

Simpson, Thacher & Bartlett, New York City, for defendants; James S. Frank, Richard A. Ross, J. Scott Dyer, John L. Lynch, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Floreine Collins brings this action to redress alleged discrimination in her employment and pension benefits because of her age and sex. The complaint asserts causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("Human Rights Law"); and the Administrative Code of the City of New York, § B1–7.0 *et seq.* ("Administrative Code"). The case is presently before the Court on defendants' motion pursuant to F.R.Civ.P. 12(b)(1), (6) to dismiss the complaint in whole or in part for lack of subject matter jurisdiction and for failure to state a claim.

*Background*

The complaint sets forth the following facts, which at this stage of the proceedings are deemed to be true.

Plaintiff, a woman, was first employed by defendant Manufacturers Hanover Trust Co. ("the bank") in 1958, when she was forty-four years of age, and remained employed by the bank in a variety of positions through the filing of the complaint.

In 1975, plaintiff became a First Level Supervisor, a position for which there was no job description. Accordingly, plaintiff, her department head, and his assistant prepared such a description, classifying the position as a "Grade 14" quasi-managerial one

with a minimum salary of $268 per week. Despite this agreed-upon job description, plaintiff was made a Grade 13 employee at a lower salary of $230 per week. Her department head explained, and it was later confirmed to plaintiff, that the lower designation and salary were necessary "to maintain a respectable, albeit artificial, differential between her salary and that of her closest male counterpart." Complaint ¶ 14. Moreover, plaintiff's salary was less than that paid to a male employee in her department who held a Grade 12, nonmanagerial job.

In 1976, a male employee, Michael Stevensen, who had previously been plaintiff's subordinate, was promoted to a second, newly created, First Level Supervisor position. While plaintiff was more experienced than Stevensen, she was not accorded the same opportunities or working conditions as Stevensen, nor, discounting for seniority, did she receive the same salary as Stevensen.

In 1977, the bank reclassified the position of First Level Supervisor to Grade 14, and plaintiff during her performance review was informed by her supervisors that they expected her to advance two more job grades. Nevertheless, although Stevensen was promoted to a position which laid the groundwork for a promotion to an officer, a bank vice-president advised plaintiff that "she neither could nor would" become an officer. Complaint ¶ 21. Instead, plaintiff was placed in a newly created, non-career path position.

In 1978, in contravention of the bank's preferred policy of promoting from within, the bank hired one John Audette, who was in his 30s, as manager of plaintiff's department. Plaintiff was 64 at the time. Audette's job duties were substantially similar to those previously performed by plaintiff, and the work performed by each was of comparable value to the bank. Nevertheless, while plaintiff remained a First Level Supervisor, Audette enjoyed the title and perquisites of Manager. These included a salary $140 greater than that paid plaintiff, an increased staff and full-time assistant,

and promotional opportunities which were in fact realized. In 1979, the bank removed Audette and restored plaintiff to her former duties. She did not, however, receive an increase in salary, a change in title, or other perquisites of managerial status.

In 1980, when plaintiff was 65, she was promoted to an officer position.

On December 14, 1978, plaintiff had filed a complaint with the New York City Commission on Human Rights ("NYCCHR" or the "Commission"), charging the bank and one of its assistant vice-presidents with discrimination in promotion due to plaintiff's sex and age. In the complaint, which was on a pre-printed form, plaintiff also asserted a Title VII violation and authorized the Commission "to accept this verified complaint on behalf of the Equal Employment Opportunity Commission ["EEOC"], subject to the statutory limitations contained in Title VII." See NYCCHR Complaint at 2, Exhibit A to defendants' Memorandum of Law. On October 5, 1979, plaintiff amended her NYCCHR complaint to expand its scope. Approximately one month later, on November 26, 1979, plaintiff began actively to press her claims before the EEOC, ostensibly because the bank refused to participate in conciliation proceedings sponsored by the Commission. The following day, plaintiff, who was not represented by counsel at the time, wrote the Commission to request that it waive jurisdiction in favor of the EEOC. The letter states in pertinent part:

"I would appreciate a waiver from the Human Rights Commission releasing their jurisdiction of my complaint of discrimination against Manufacturers Hanover Trust Co. and ask that the Equal Employment Opportunity Commission to now have jurisdiction over my complaint. "I am not in any way withdrawing my complaint, it will continue under the Equal Employment Opportunity Commission." Exhibit B to defendants' Memorandum of Law.

In response thereto, on November 30, 1979, the Commission issued a Confirmation of Withdrawal, declaring plaintiff's case closed

on the ground that "[t]he complaint has been withdrawn by the complainant." *Id.* The EEOC issued plaintiff a notice of right to sue on December 22, 1980, and on March 3, 1981, within 90 days thereof, plaintiff filed this suit.

On the instant motion to dismiss, defendants advance a number of claims. With respect to plaintiff's claims under Title VII and the ADEA, defendants' attack is two-fold. First, they allege that by withdrawing her complaint before the NYCCHR, plaintiff made that proceeding a nullity and thus did not satisfy the deferral requirements found in both statutes. Second, they contend that the requisite administrative charges were not filed with the EEOC in a timely fashion, and that the allegations contained therein were substantially narrower than those asserted in the instant complaint. With respect to plaintiff's claims under the ADEA and the EPA, defendants assert that the action is time-barred. Defendants attack the ERISA claim based on plaintiff's failure to exhaust the internal remedies of the pension plan at issue, and further assert that defendant Manufacturers Hanover Trust Company Retirement Plan (the "MHT Plan") should be dropped as a party. With respect to plaintiff's pendent claims, defendants assert that those brought under the Human Rights Law are barred either by the statute of limitations or by plaintiff's election of remedies, and

that those asserted under the Administrative Code are precluded either by plaintiff's failure to obtain a final order from the NYCCHR or by plaintiff's election of remedies. Finally, defendants move to strike plaintiff's prayer for relief, insofar as it seeks compensatory damages under the ADEA.[1]

I address these arguments in turn.

*Deferral Under Title VII and the ADEA*

Subsection 706(c) of Title VII, 42 U.S.C. § 2000e–5(c), provides that, if the alleged unlawful employment practice occurs in a deferral state—a state such as New York with its own fair employment practices agency—no charge may be filed with the EEOC until sixty days after state proceedings have been commenced, unless such proceedings are earlier terminated.[2] The complaint must first be filed with the appropriate state or local agency so that the agency has the first opportunity to conciliate the dispute. In other words, Title VII provides for sequential jurisdiction: the subject matter jurisdiction of the EEOC to investigate a claim and issue a notice of right to sue vests only after the person aggrieved has filed with the state or local agency and given that agency the initial opportunity to resolve the dispute. *Oscar Mayer & Co. v. Evans*, 99 S.Ct. 2066, 2071–72, 60 L.Ed.2d 609, 441 U.S. 750, 756–57 (1979); *Albano v. General Adjustment Bureau, Inc.*, 478

---

1. In their Memorandum of Law, defendants describe their motion as one to strike plaintiff's demand for compensatory and punitive damages under Title VII, the ADEA, or the EPA. A review of the complaint, however, reveals that there is no demand for punitive damages under any of these statutes. Rather, in addition to seeking back pay and compensatory damages under all three, plaintiff has asked for liquidated damages under the ADEA and the EPA. Accordingly, insofar as defendants move to strike plaintiff's demand for punitive damages under Title VII, the ADEA, or the EPA, the motion is denied as moot. With respect to defendants' motion to strike the demand for compensatory damages under Title VII and the EPA, plaintiff has conceded the correctness of their position. *See* plaintiff's Memorandum of Law at 57 n.51. Accordingly, that portion of the motion is hereby granted.

Defendants' motion to strike plaintiff's demand for a jury trial under Title VII is also denied as

moot, the complaint only requesting a trial by jury "of all issues so triable."

2. 42 U.S.C. § 2000e–5(c) provides in pertinent part:

"In the case of an alleged unlawful employment practice occurring in a State [such as New York], or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under State or local law, unless such proceedings have been earlier terminated. . . ." (material in brackets supplied).

F.Supp. 1209, 1212–13 (S.D.N.Y.1979), *aff'd without opinion*, 622 F.2d 572 (2d Cir. 1980). The ADEA, like Title VII, contains a deferral provision. 29 U.S.C. § 633(b).[3] Unlike Title VII, however, the ADEA provides for concurrent federal and state jurisdiction. *Oscar Mayer, supra*, 441 U.S. at 756–57, 99 S.Ct. at 2071–72.

■ The purpose of deferral is to avoid "premature interference by the Federal Government" in disputes better resolved at the local level, *Lombardi v. Margolis Wines & Spirits, Inc.*, 465 F.Supp. 99, 101 (E.D.Pa. 1979), *quoting Bell v. Wyeth Laboratories, Inc.*, 448 F.Supp. 133, 135 (E.D.Pa.1978), by "giv[ing] state agencies a prior opportunity to consider discrimination complaints." *Love v. Pullman*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972). But the opportunity provided the local agency is not without limit: by merely cooperating with the state and waiting the requisite sixty days while the state agency has the complaint, a complainant is deemed to have adequately pursued state administrative remedies under Title VII. *Lombardi, supra*, 465 F.Supp. at 101; *Albano, supra*, 478 F.Supp. at 1214. Under the ADEA, the state complaint can even be pursued *after* a notice of intent to sue is filed with the EEOC; the claimant must only wait sixty days before filing suit. *Oscar Mayer, supra*. Thus, while a claimant's voluntary termination of local administrative proceedings before the expiration of the sixty day period will bar her from later asserting that she has exhausted state administrative remedies, "if the termination of the state investigation was in any way desired or implemented by the state agency," or the state agency was provided some *bona fide* oppor-

tunity to dispose of the matter, the deferral requirements have been met. *Lombardi, supra*, 465 F.Supp. at 101. Compare *Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

■ Such is the case at bar. Plaintiff not only filed a charge and cooperated with the NYCCHR, she participated actively in conciliation efforts for just short of one year before requesting from the Commission "a waiver . . . releasing their jurisdiction" without intending "in any way" to withdraw her complaint. Furthermore, her request came after a number of attempts at conciliation that were frustrated, at least in part, not by plaintiff, but by defendants. Moreover, plaintiff, who was not represented by counsel at the time, claims that she withdrew her NYCCHR complaint only when advised by the Commission itself that such action was necessary in order to prosecute before the EEOC, a claim supported by current practice and by the explanation for her request given by plaintiff in her letter to the Commission. Accordingly, the case is governed by *Lombardi, supra*, in which it was held that the indirect participation of the state agency in the termination of local proceedings constituted sufficient opportunity to investigate within the meaning of the deferral section of Title VII. 465 F.Supp. at 101–02.

Undisputed facts show that the NYCCHR was provided the opportunity to investigate and conciliate plaintiff's claim, and that it in fact exercised that opportunity. Consequently, the deferral requirements of Title VII and the ADEA have been satisfied and the Court's subject matter jurisdiction is not lacking on this ground.

**3.** 29 U.S.C. § 633(b) provides in full:

"In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided*, That such sixty-day

period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority."

*Timeliness and Scope of the EEOC Charge Under Title VII and the ADEA*

Pursuant to subsection 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), a claimant in a deferral state has 300 days from the act complained of within which to file an administrative charge with the EEOC. Subsection 7(d) of the ADEA, 29 U.S.C. § 626(d), the counterpart of § 706(e) of Title VII, also gives a deferral state claimant 300 days to file an administrative charge. The ADEA charge was originally to be filed with the Secretary of Labor; effective July 1, 1979, however, jurisdiction was transferred to the EEOC.

Defendants allege that because the only specified instance of discrimination set forth in plaintiff's original administrative charge related to events surrounding John Audette in September 1978, a date which is more than 300 days prior to November 26, 1979, the date plaintiff alleges in her complaint that she "brought" her case before the EEOC, her administrative charges were untimely. Defendants further argue that any discriminatory acts which occurred after September 1978, were never before the EEOC and thus not subject to review by this Court.

Turning first to the question of timeliness, the Court holds that, notwithstanding the allegation in the complaint that plaintiff "brought" her charge before the EEOC on November 26, 1979, plaintiff's charge was "filed" with the EEOC for purposes of Title VII on February 12, 1979, and with the EEOC for purposes of the ADEA on July 1, 1979. With respect to the Title VII claim, plaintiff authorized the NYCCHR to accept her complaint on behalf of the EEOC when she filed her local charge on December 14, 1978; therefore, under the principles of *Love v. Pullman, supra,* 404 U.S. at 526, 92 S.Ct. at 618, the complaint, insofar as it was sent to the NYCCHR as agent of the EEOC, was held in "suspended animation" pending state proceedings, and actually "filed" with the EEOC sixty days after commencement of state proceedings—February 12, 1979. With respect to plaintiff's age discrimination charge, she concededly did not file any charge with the Secretary of Labor prior to July 1, 1979, when responsibility was transferred to the EEOC, nor did she file a new age discrimination charge with the EEOC after that date. But her Commission charge, which was accepted the previous December on behalf of both the Commission and the EEOC, asserted that defendants were guilty of age discrimination. Thus, plaintiff's age discrimination claim may be deemed to have been before the EEOC when the EEOC assumed jurisdiction over charges of that nature—July 1, 1979. And the EEOC, by assigning plaintiff's sex discrimination charge a case number different from that assigned to her age discrimination claim, obviously treated plaintiff's charges as being asserted under both Title VII and the ADEA.

Accordingly, plaintiff's cause of action must have accrued on or after April 15, 1978, in order to be timely under Title VII, and on or after September 3, 1978, in order to be timely under the ADEA. It is obvious that a number of acts alleged in the complaint occurred after these dates; for example, Audette's promotion to Department Manager in September 1978, the subsequent transfer of all of plaintiff's duties to Audette, and the eventual retransfer of those duties back to plaintiff without a concomitant increase in salary and benefits. The crucial issue is the status of those allegedly discriminatory acts that occurred prior to the operative dates, in the context of the timeliness of an administrative charge. Those acts include the initial hiring of Audette from without the bank in January 1978, the assignment of a Grade 13 to plaintiff's position as First Level Supervisor in 1975, the allegations that plaintiff, from 1975 to mid-1978, was paid less than a male employee in her department with a lower grade, the differential treatment given plaintiff and her male counterpart, Stevensen, and the advice given plaintiff that she never would become an officer. Defendants, although they do not address the issue in this context but merely challenge the timeliness of the EEOC charge with respect to the September 1978 incident, claim that each allegedly discriminatory act is discrete,

and thus that those which occurred prior to the operative dates are time-barred. Plaintiff contends that the complaint alleges a pattern of discrimination beginning in 1975 and ending with plaintiff's retirement, and that the violation is therefore a continuing one. Plaintiff also contends, in a seemingly contradictory manner, that the "operative events, for purposes of this complaint," began with Audette's hiring in January 1978, plaintiff's Memorandum of Law at 22, and that "the earlier violations against [plaintiff], beginning in 1975, should be considered by the Court" in terms of their "formidable impact upon all of the available remedies." *Id.* at 26. Thus, it seems that plaintiff may view the continuing violation as having begun in January 1978, with all that preceded it background.

It is clear that, if the act of hiring Audette was discriminatory at all, it constituted part of a continuing pattern of discrimination, "the *last occurrence*" of which did not occur until after September 1978. *See Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978). "[T]he critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). In the case at bar, and as alleged in the complaint, a constant erosion of plaintiff's duties occurred during the entire period of Audette's employment; she was not merely feeling current effects of past discrimination.

█ The same result, however, would not obtain with respect to the assignment of a Grade 13 to plaintiff's position as First Level Supervisor in 1975, if in fact plaintiff is arguing that that too is part of a continuing violation. The allegation, in essence, is that plaintiff was demoted, or at least not promoted. Because there is a "reasonable ascertainable date on which the act occurred, that is the day on which the statute began to run," notwithstanding that plaintiff may still feel some effects as a result of the prior discriminatory act. *Marshall v. American Motors Corp.*, 475 F.Supp. 875 (E.D. Mich.1979). *See generally Milton v. Weinberger*, 645 F.2d 1070, 1075 (D.C.Cir.1981).

Any other result would run afoul of the purpose of the limitations period as enunciated by the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980):

> "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past."

While I conclude that those claims arising out of the First Level Supervisor appointment are time-barred, all acts prior to the Audette episode "may constitute relevant and probative background evidence." *See United Air Lines, supra*, 431 U.S. at 558, 97 S.Ct. at 1889. These actions will, therefore, be allowed as evidence on the question whether plaintiff was discriminated against because of sex or age. Although the evidence may concern time-barred conduct, " 'it is relevant, . . . and may be used . . . to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.' " *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981), *quoting Crawford v. Western Electric Co.*, 614 F.2d 1300, 1314 (5th Cir. 1980).

█ Having determined that plaintiff satisfied the filing requirements of the ADEA and Title VII with respect to the Audette episode insofar as her charges were filed with the EEOC within the statutory period, I turn now to the question whether the charges made therein—that plaintiff was discriminated against in promotions—are sufficient to support the charges herein which are broader both in the events they cite and the methods of discrimination. I hold that they are. First, plaintiff in fact amended her administrative charge to include all the allegations that defendants now claim were never before the EEOC. It appears that the fact that defendants never saw the amended charge is due to their own lack of cooperation at conciliation proceedings; in any event, the EEOC was given the opportunity to investigate and conciliate the charge. Second, while the post-1978 allegations were not specifically asserted in

the original EEOC charge, they could reasonably be expected to be investigated as a result of the EEOC investigation prompted by the specific charge contained therein, and can thus be asserted in this action. *See, e.g., Silver v. Mohasco Corp.*, 602 F.2d 1083 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *McBride v. Delta Air Lines, Inc.*, 551 F.2d 113 (6th Cir. 1977), *vacated on other grounds*, 434 U.S. 916, 98 S.Ct. 387, 54 L.Ed.2d 273 (1977); *EEOC v. General Electric Co.*, 532 F.2d 359, 366 (4th Cir. 1976). That is because, as in *Mohasco*, the EEOC had in its possession plaintiff's amended charge for more than one year before issuing its notice of right to sue. Furthermore, the discriminatory acts which defendants claim were not before the EEOC were occurring while the EEOC investigation was continuing, and it would be absurd to think that an investigation of the September 1978 incident would not take notice of present circumstances. Finally, the later conduct was "directly related to and stem[med] from" the Audette episode. *See Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980).

*Statute of Limitations Under the ADEA and the EPA*

■ A cause of action alleging discrimination in violation of the ADEA or the EPA must be commenced within two years of the act of discrimination or, if the act complained of is a willful violation, within three years of the date of the challenged conduct. For the ADEA, *see* 29 U.S.C. § 626(e) (incorporating statute of limitations contained in Portal-to-Portal Pay Act, 29 U.S.C. § 255); for the EPA, *see* 29 U.S.C. § 255; *Beebe v. United States*, 640 F.2d 1283 (Ct.Cl.1981). In the case at bar, defendants argue that their conduct was not willful and that the two-year period should apply. Thus, according to defendants, any conduct that occurred prior to March 3, 1979 would be time-barred.

■ The question of willfulness necessarily implicates questions of the mental state of the defendants, their knowledge, their intent, and their belief in the propriety of their acts. This is so whether a defendant's mere suspicion that his actions were governed by the ADEA provides a sufficient basis for a finding that his acts were willful, as the Fifth Circuit held in *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974) and in *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir. 1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), or whether something more than negligence, such as premeditation or a formed intention, is required. In either case, the defendants' state of mind must be determined after careful evaluation of all the facts, and thus does not present a question appropriate for resolution on a motion to dismiss. Suffice it to say that the recitation of facts in the complaint could provide the basis for an inference of willfulness.

*ERISA*

■ In her complaint, plaintiff alleges that her pension benefits are calculated on the basis of plaintiff's final average salary, and that her final average salary is unnaturally low because of the unlawful discrimination to which she was subject. Accordingly, plaintiff believes she is entitled to benefits in a greater amount and seeks clarification pursuant to 29 U.S.C. § 1132(a)(1)(B) of her right to receive future benefits in a higher amount from the Plan. Although plaintiff concedes in her papers that her reliance on ERISA is unorthodox, she asserts that no other remedy is available to correct "illegal methodology based upon improper sex and age discrimination." Plaintiff's Brief at 59. Yet plaintiff in her papers later admits that "[i]t is true that plaintiff's claims of employment discrimination, if successful, will provide her with a comprehensive monetary remedy, including recovery of lost pension benefits." *Id.* at 59–60.

It is this latter concession that is fatal to plaintiff's ERISA claim. She invokes the Court's equity power to sustain her ERISA claim, yet admits that there are other available, comprehensive remedies. She further concedes that internal remedies, which must

be exhausted as a prerequisite to an ERISA suit, may exist for mere computational errors; it is clear that, if plaintiff was in fact discriminated against, the level of her pension benefits will become no more than a computational error if plaintiff also proves at trial that her final average salary would have been higher but for the alleged discrimination, a necessary element of her back pay claim. Finally, plaintiff has provided the Court with no authority for the proposition that ERISA was intended to reach conduct of the sort described in the complaint. Under these circumstances, it would be inappropriate for the Court to exercise its equity jurisdiction.

Defendants' motion to dismiss plaintiff's sixth cause of action against the defendant Plan is granted.

*Pendent Claims*

■ In her Brief, plaintiff appears to have abandoned her claim under the New York City Administrative Code. In any event, there having been no final order from the NYCCHR, that claim is barred. N.Y.C.Admin.Code § B1–7.0 *et seq.*

■ Plaintiff's claim under the New York State Human Rights Law presents a more difficult problem of election of remedies. Defendants argue that, pursuant to N.Y.Exec.Law § 297(9) (McKinney Supp. 1980–81),[4] plaintiff's mere filing of a complaint alleging discrimination with the NYCCHR vests that agency with jurisdiction to the exclusion of a judicial remedy under the statute. Plaintiff posits that such a construction undermines the rule that the federal anti-discrimination statutes are "independent and cumulative" of state remedies. *Voutsis v. Union Carbide Corp.*, 452 F.2d 889, 893 (2d Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972).

It is true, as plaintiff argues, that pursuit of state administrative remedies will not bar maintenance of a cause of action under the federal statutes involved herein. As the Second Circuit concluded in *Voutsis, id.*:

"The 'harsh' and 'technical' procedural rule of election of remedies ... is not applicable to a Title VII civil rights plaintiff.... The system of remedies is a complementary one, with the federal remedy designed to be available after the state remedy has been tried without producing speedy results."

Any other result would contravene the rule that a state statute may not limit federal court jurisdiction, *see Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Clark v. Times Square Stores Corp.*, 469 F.Supp. 654 (S.D.N.Y.1979); and would foreclose a plaintiff in a deferral state, where initial consideration by a local agency is mandated by Title VII and the ADEA, from availing himself of the federal remedy altogether.

Defendants do not argue, however, that plaintiff's pursuit of state administrative remedies precludes maintenance of a cause of action under federal law; their argument is that there is an election of remedies with respect to plaintiff's *pendent* claims. With respect to those claims, the Court is sitting as a *state* court, and is bound by principles of *state* law. Pursuant to New York law, as codified in § 297(9), plaintiff is precluded from seeking relief in a state court once plaintiff files a complaint with the NYSDHR. *See State Division of Human Rights v. Commissioner of N. Y. S. Dep't of Civil Service*, 57 A.D.2d 699, 395 N.Y.S.2d 774, 776 (4th Dep't 1977) ("An aggrieved person may seek relief [under N.Y.Exec.Law § 297(9) ] either in an appropriate court or by complaint to the State Division of Human Rights, but not both."); *Allison v. Board of Educ. Union Free*

---

**4.** Section 297(9) provides in pertinent part:

"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed."

*School*, 70 Misc.2d 215, 333 N.Y.S.2d 261 (Sup.Ct. Nassau County 1972) ("I am of the opinion that in enacting section 297 [subd. 9] of the Executive Law, the Legislature intended to give individuals a choice. They could either elect to sue in court and recover all damages which they could establish ... or they could elect to seek administrative relief under the Human Rights Law."). Accordingly, this Court, sitting as a state could with respect to the pendent claims, is bound to dismiss them.[5]

*Compensatory Damages under the ADEA*

In her complaint, plaintiff demands as redress for the alleged ADEA violation, approximately $18,000 in unpaid wages, an equal amount as liquidated damages,[6] and $10,000 "in compensation for the pain, suffering and emotional distress she suffered as a consequence of defendant's actions." Compl. ¶ 42. Defendants move to strike the latter demand.

It is clear for the reasons stated by Judge Motley in *Ayres v. Federated Department Stores, Inc.*, 24 Fair Empl.Prac.Cas. 528 (S.D.N.Y.1980) that damages of the latter sort are not authorized under the ADEA. *Accord, Naton v. The Bank of California*, 649 F.2d 691 (9th Cir. 1981); *Slatin v. Stanford Research Inst.*, 590 F.2d 1292 (4th Cir. 1979); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978); *Dean v. American Security Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Accordingly, defendants' motion for summary judgment dismissing plaintiff's prayer for compensatory damages other than those for unpaid salary and benefits is granted.[7]

CONCLUSION

To summarize briefly the Court's rulings:

(1) Defendants' motion to dismiss the Title VII and ADEA claims on the ground that plaintiff failed to comply with the procedural prerequisites to suit is denied.

(2) Defendants' motion to dismiss the ADEA and EPA claims on the basis that they are barred by the applicable statute of limitations is denied.

(3) Defendants' motion to dismiss plaintiff's cause of action under ERISA is granted, and defendant Manufacturers Hanover Trust Company Plan is hereby dropped as a party defendant.

(4) Plaintiff's pendent claims are barred under the doctrine of election of remedies recognized by the New York State courts, and accordingly they are hereby dismissed. As a result, plaintiff's demand for punitive damages is stricken as well.

(5) Defendants' motion to strike plaintiff's demand for compensatory damages is granted.

Counsel for the parties are directed to appear at a status conference on July 9, 1982 at 3:00 p. m. in Courtroom 312. Discovery should proceed in the interim.

It is So Ordered.

---

**5.** The same analysis applies with equal force to plaintiff's cause of action under the Administrative Code.

**6.** Defendants' motion to strike plaintiff's claim for liquidated damages must be denied in light of the Court's holding that the question of wilfulness cannot be resolved on the present state of the record.

**7.** I recognize that the Second Circuit has yet to rule on the issue of compensatory damages, and that there is a split of authority among district courts. *See, e.g., Pavlo v. Stiefel Laboratories, Inc.*, 22 Fair Empl.Prac.Cas. 489 (S.D. N.Y.1979) (Broderick, J.). Plaintiff may, of course, at any time bring to the Court's attention a Second Circuit decision holding to the contrary.