James MOYLAN, Plaintiff,

v.

NATIONAL WESTMINSTER BANK
USA, Defendant.

No. 86 CV 2299.

United States District Court,
E.D. New York.

May 17, 1988.

Daniel A. Dolewski, St. James, N.Y., for plaintiff.

Alfred Giardino, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Many employers have recently instituted permissive early retirement programs. Accordingly, increasing numbers of older workers face the major decision of whether to accept early retirement. *See Paolillo v. Dresser Industries,* 821 F.2d 81, 84 (2d Cir.1987). In this case, plaintiff was employed by defendant for more than twenty-seven years. Shortly after defendant instituted an early retirement program, plaintiff received his first unfavorable job rating ever, was denied a promotion that he allegedly had sought, and was informed that he could eventually be discharged if he continued to receive unfavorable job ratings. Shortly thereafter, he retired. He alleges that defendant discriminated against him because of his age by refusing to promote him and by discharging him, in violation of federal law. He has also brought pendent state claims. Defendant moves for summary judgment to dismiss the Complaint. Fed.R.Civ.P. 56(b). For the reasons set forth below, the motion is granted in part and denied in part.

## FACTS

The plaintiff, James Moylan, commenced employment with the defendant, National Westminster Bank USA ("NatWest") in 1957. In 1984, at the age of fifty-nine, Moylan was an assistant vice-president and loan officer in NatWest's commercial banking division. His superior was William Howe, and Howe's boss was Ernest Geib, who had joined NatWest in July 1984.

In September 1984, Howe announced that he planned to retire. Moylan asserts that he asked Howe to recommend him as Howe's replacement to Geib, and that Howe did so. Geib did not immediately appoint a permanent replacement. He instead selected Martin Siegel, who was Moylan's age, as Howe's interim replacement.

In January 1985, NatWest announced a plan pursuant to which eligible employees, including Moylan, could retire early and receive a package of enhanced benefits. The plan was open from March 1, 1985 to July 1, 1985.

All NatWest employees, including Moylan, received annual job appraisals from their supervisors. In his twenty-seven years at NatWest, Moylan had not received an unfavorable rating. His most recent favorable appraisal had been issued by Howe in March 1984. Moylan's string of successes, however, came to an abrupt end when Geib issued his appraisal for the May 1984 to May 1985 period. Geib gave Moylan a "less-than-favorable" rating, stating that Moylan (1) had set up obstacles and had trouble adjusting to organizational changes that Geib had allegedly set into

motion; (2) was negative at staff meetings; (3) did not make sufficient telephone contact with customers; and (4) responded and adapted slowly to the needs of the organization.

Not surprisingly, Moylan disagreed with Geib's assessment. On May 21, he met with Geib to discuss the appraisal. Geib informed Moylan that, pursuant to NatWest policy, he would not receive a scheduled raise unless the next appraisal, set for August 1985, rated him favorably. If that appraisal were to rate him unfavorably, he could be placed on probation. He would be subject to discharge if a subsequent appraisal rated him unfavorably. The appraisals were to be made by Geib.

Moylan asserts that, shortly after this meeting, he was contacted by Arlee Weiss, an officer in NatWest's personnel department. He alleges that Weiss again raised the possible spectre of probation and discharge, and suggested the alternative of early retirement pursuant to the plan.

Moylan thus began to consider retirement. At about this time, Geib appointed a thirty-nine-year-old man to fill Howe's position. Shortly thereafter, Moylan retired effective June 28, 1985. Pursuant to the retirement program, he received enhanced benefits and a lump sum payment in excess of $24,000. He was permitted to work at his former job on a per diem basis through January 1986. Moylan's position was filled with a thirty-five-year-old man.

In December 1985, Moylan filed charges of age discrimination against NatWest with (1) the Equal Employment Opportunity Commission under section 7 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, and (2) the New York State Division of Human Rights under N.Y.Exec.Law § 297 (McKinney 1982 & Supp.1988). The state agency eventually issued a no-probable-cause determination.

This Complaint followed. Count I alleges constructive discharge due to age discrimination, in violation of the ADEA, 29 U.S.C. § 623(a). Count II alleges refusal to promote plaintiff because of age, in violation of the same provision of the ADEA.

Count III alleges breach of contract of employment under New York law. Count IV alleges age discrimination, in violation of N.Y.Exec.Law § 296(1)(a). The Complaint demands $250,000 in compensatory damages and $500,000 in punitive damages.

NatWest has moved for summary judgment to dismiss all four claims, and has set forth facts that differ considerably from Moylan's version. NatWest asserts that when Geib assumed office in 1984, he attempted to alter the procedural and substantive duties of loan officers, including Moylan. Geib required officers to market variable, as opposed to fixed, rate loans; make more telephone calls; attend more meetings; and seek larger loans, which required a "team approach." During Geib's tenure, Moylan concedely did not market a variable rate loan, and allegedly failed to adapt to Geib's new system. Defendant thus asserts that the appraisal of Moylan was accurate and has offered uncontradicted evidence that it was made with input from Siegel, Howe's interim replacement. Moylan counters that Geib did not institute new policies and that, if he did so, the changes were not communicated to Moylan until the time of the negative appraisal.

Defendant also argues that Moylan failed to apply for Howe's position. It asserts that, following the unfavorable appraisal, Moylan was informed that he could receive his scheduled raise if his performance improved, and that he was not threatened or coerced to retire.

Defendant argues that Moylan cannot make a prima facie showing of wrongful termination because he was not constructively discharged. It argues that he cannot make a prima facie showing of wrongful failure to promote because he did not apply for a promotion. In any event, it argues, Moylan has failed to offer evidence to show that NatWest's legitimate reasons for discharging and failing to promote Moylan were a pretext for age discrimination. It also argues that the breach of contract claim must fail as a matter of law, and that the age discrimination claim under state law is barred by the doctrine of election of remedies.

## DISCUSSION

■ Summary judgment should be rendered only if the evidence discloses "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to defeat a motion for summary judgment, the opponent must, by his own affidavit or "depositions, answers to interrogatories, and admissions on file," Fed.R.Civ.P. 56(e), set forth specific facts that place material issues in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Materiality is determined by reference to the substantive law that governs the challenged claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### I. The Federal Claims

■ Plaintiff concedes that his age discrimination claims consists solely of indirect evidence. The parties thus agree that the standard of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny may be applied. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 119 n. 1 (2d Cir.1984). Under this standard, plaintiff must, by a fair preponderance of the evidence, make a prima facie showing of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If he does so, the employer is presumed to have discriminated, a presumption it rebuts if it sets forth a legitimate, nondiscriminatory reason for its conduct. *Id.* at 253–55, 101 S.Ct. at 1093–95. If plaintiff's prima facie case is rebutted, plaintiff must show by a preponderance of the evidence that the reason offered by defendant was not the real reason for defendant's employment decision. *Id.* at 255–56, 101 S.Ct. at 1094–95. The burden of persuasion rests at all times on the plaintiff. *Id.* at 256, 101 S.Ct. at 1095; *see Haskell*, 743 F.2d at 119 n. 1. To make a prima facie showing on Counts I and II, plaintiff must prove that he was in the protected age group, was qualified for his position and for the position to which he allegedly sought promotion, and was replaced by, and passed over in favor of, a younger individual. *See id.* On Count I, he must also show that he was discharged. *See id.* On Count II, he must also show that he applied for the promotion. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

NatWest asserts that Moylan was not discharged and did not apply for a promotion. Thus, these two material issues allegedly are in dispute.

■ Moylan alleges that he was constructively discharged. "A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (quoting *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir.1975)). To find that Moylan was constructively discharged the trier-of-fact must conclude that a reasonable person in Moylan's position would have felt compelled to resign. *Pena*, 702 F.2d at 325. The inquiry obviously is fact-specific, and the results should be dictated by common sense. Thus, a constructive discharge cannot be found where the employer attempts to dissuade the employee from retiring and the employee is faced with no loss in pay or change in title, *e.g.*, *id.* at 325–26, or when the employee's job performance is criticized but he is not threatened with discharge, *e.g.*, *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1253–56 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Constructive discharge has been found where, *inter alia*, the employee has been demoted and placed in a job that she was physically incapable of performing, *e.g.*, *Williams v. Caterpillar Tractor Co.*, 770 F.2d 47, 48–50 (6th Cir.1985), and where the employee has been demoted, questioned several times about retirement plans and eventually given a choice between retirement and a twelve-to-fourteen hour workday, *e.g.*, *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561–62 (1st Cir.1986).

The evidence presented by Moylan places his case perilously close to the line where constructive discharge cannot be found as a matter of law. I am nevertheless persuaded at present that the evidence would permit a jury finding of constructive discharge. First, the unfavorable appraisal was the first that Moylan had ever received, and he asserts that it was completely inaccurate and biased. It was prepared by Geib, a newcomer to NatWest, rather than Siegel, Moylan's interim superior and co-worker for nearly twenty years. Second, Moylan asserts that soon after the appraisal, a supervisor informed him that if he received another unfavorable appraisal, he would be placed on probation and, subsequent to another one, could be terminated. The subsequent appraisals were scheduled to be prepared by Geib. The supervisor thereafter offered Moylan the option of retirement. Third, due to the poor appraisal, Moylan was denied a pay raise and believed that, as long as Geib prepared his appraisals, he would never receive a raise.

The picture painted by Moylan is one of a dutiful employee unfairly chastized and robbed of a salary raise by a new superior. After nearly thirty years of steady advancement, he is faced with a possible discharge—and its attendant income reduction—within six months. He realizes that if he is discharged, this fact, combined with his age, promises to make job hunting a dismal exercise. Management, however, quickly informs him that this scenario can be avoided if he retires within one month.* Under these circumstances, I am unable to conclude as a matter of law that a reasonable person would not have felt compelled to leave. I therefore conclude that Moylan can make a prima facie showing on Count I.

I now turn to defendant's assertion that Moylan cannot prove a prima facie case on Count II because he concedes that he did not apply for Mr. Howe's position. Moylan asserts, without contradiction, that he did not formally apply because NatWest lacked a formal application process. He asserts that he communicated his desire for a promotion to Howe, who communicated it to Geib. Moylan has thus presented a factual question of whether he did apply for a promotion in the context of NatWest's practices. I therefore conclude that a reasonable jury could find that he has made a prima facie case on Count II.

Defendant thus bears the burden of producing a legitimate, non-age-discriminatory reason for why plaintiff was not promoted and subsequently discharged. *See Haskell*, 743 F.2d at 119 n. 1. Here, defendant asserts that Moylan was discharged and not promoted for the same reason: his inability to adapt to changes instituted by Geib, the particulars of which were outlined in the appraisal. This reason clearly is facially legitimate and nondiscriminatory. I therefore conclude that defendant can meet its burden of production.

If Moylan's prima facie case is thus rebutted, he must then show that the reasons proffered by NatWest were not the true reasons for its employment decision. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Moylan concedes that he cannot prove this point directly. He therefore must show that the employer's explanation is unworthy of credence. *Id.*

Moylan's evidence lacks most of the characteristics commonly used to show pretext. *E.g., McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825–26 (different treatment of nonprotected employees who engaged in the same conduct as plaintiff; employer's prior treatment of plaintiff; and employer's policy and practice with respect to other members of plaintiff's class). Instead, he challenges Geib's appraisal—and defendant's justification for its conduct—on two grounds: (1) Geib did not institute any of the changes outlined in the appraisal, and (2) even if he did, the changes were not communicated to Moylan.

---

* Plaintiff does not argue that age discrimination can be inferred from the existence of defendant's early retirement program. *Cf. Gray v. New England Tel. & Tel.*, 792 F.2d 251, 255 (1st Cir.1986). He argues that his superiors misused the plan by forcing him to choose between it and eventual discharge. *See McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754–55 (5th Cir.1980).

It is not the function of the judiciary to second-guess ordinary business decisions. Thus, a plaintiff may not show pretext simply by attacking the credibility or wisdom of the employer's decisionmakers. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983). It is the employer's perception of the plaintiff, not the plaintiff's perception of himself, that is relevant in determining whether plaintiff has shown pretext. *Smith v. Flax*, 618 F.2d 1062, 1063 (4th Cir.1980).

Here, however, Moylan does not merely attack the ability of his superiors to assess his job performance. Rather, he asserts that he was "set up" by management. He alleges that management deliberately evaluated him unfairly based either on sham job requirements or new requirements that were not communicated to him. He attacks not the business judgment of his superiors, but rather the credence of defendant's proffered reason for its treatment of him. The fact-finder thus will be asked to decide which of two explanations of NatWest's conduct it believes. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

Reading the record in the light most favorable to Moylan, as I must, *see Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed. 2d 74 (1985), I conclude that he has presented a sufficient, if minimal, set of facts to support a finding of pretext. Accordingly, I conclude that summary judgment as to the first two counts must be denied.

## II. State Law Claims

Count III alleges that NatWest breached Moylan's contract of employment. NatWest responds that Moylan was an employee-at-will. Moylan counters that he relied on unspecified personnel practices of NatWest to accept, and remain in, employment there.

Under New York law, employment for an indefinite term is presumed to be an employment-at-will. *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 300, 448 N.E.2d 86, 89, 461 N.Y.S.2d 232, 235 (1983). An employer may terminate an employee-at-will "at any time for any reason or even for no reason." *Id.* at 300–02, 448 N.E.2d at 89, 461 N.Y.S.2d at 235. In such a case, the employee does not have a claim for wrongful discharge. *See id.* at 297, 448 N.E.2d at 87, 461 N.Y.S.2d at 233. If, however, the employee shows an express limitation on the employer's right to discharge him, he may sue the employer for breach of contract. *See id.* at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237–38. Moylan has presented no specific evidence bearing on this issue. He instead states in a general and conclusive manner that he came to rely on defendant's assurances. This evidence, with nothing more, is insufficient for a jury to find that Moylan was more than an employee-at-will. *E.g., id.* at 304–05, 448 N.E.2d at 91, 461 N.Y.S.2d at 237–38. *Compare Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982) (limitation on right to discharge may be inferred from concrete evidence of such a limitation). Thus, I conclude that Moylan has no claim for a breach of contract.

Count IV alleges a claim under N.Y.Exec.Law § 296(1)(a), which bars, among other things, age discrimination. Moylan also filed this claim with the appropriate state agency, which rejected it. Accordingly, he is barred by the doctrine of election of remedies from bringing this action. *Id.* § 297(9); *see Collins v. Manufacturers Hanover Trust Co.*, 542 F.Supp. 663, 672–73 (S.D.N.Y.1982).

## CONCLUSION

For the forgoing reasons, it is hereby ORDERED that defendant's motion to dismiss Counts III and IV of the Complaint is granted. The motion is denied in all other respects.

SO ORDERED.