**Frank T. CURTO, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., a New York corporation, Defendant.**

No. 82 C 1576.

United States District Court,
N.D. Illinois, E.D.

Dec. 15, 1982.

Rudy J. Huizenga, Donnelly & Associates, P.C., Detroit, Mich., Elizabeth H. Seidman, Chicago, Ill., for plaintiff.

Diana C. White, Fox & Grove, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This case presents two important questions under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1976 & Supp. II 1978). We must decide what the time limit is for filing an age discrimination complaint under the ADEA with the Equal Opportunity Employment Commission ("EEOC") in a state which provides an administrative remedy for age discrimination, and to what extent a complainant must cooperate with the state administrative agency in order to preserve his or her right to file suit under the ADEA. While the issues may sound esoteric and hypertechnical, their resolution is important to the ability of persons to preserve their rights under the ADEA.

## I

Defendant Sears, Roebuck and Co. hired plaintiff Frank T. Curto as an "assistant to the Vice-President" on May 1, 1970. On April 21, 1980, plaintiff was informed that he would be discharged effective July 31, 1980. At the time, plaintiff was 58 years old. Plaintiff alleges that he was a highly competent employee and that he was terminated because of his age, while younger employees in comparable positions who were no more competent than plaintiff were permitted to keep their jobs.

On July 31, 1980, as scheduled, plaintiff lost his job. On December 12, 1980, 235 days after the allegedly unlawful employment practice at issue here,[1] counsel for plaintiff sent charges of age discrimination against defendant to the EEOC and the Illinois Department of Human Rights ("IDHR") by certified mail. On December 22, 1980, 245 days after the alleged discrimination took place, plaintiff signed a sworn charge thereby formally commencing proceedings before the IDHR.[2] On April 8, 1981, IDHR notified plaintiff that it had scheduled a conference on his charge for April 20. On April 16, the conference was postponed at plaintiff's request. Plaintiff never requested a new conference date. Throughout June and July, an investigator for IDHR attempted to contact plaintiff, but neither plaintiff nor his counsel returned the investigator's calls. On September 4, 1981, plaintiff's IDHR charge was dismissed at his request. This lawsuit followed.[3] Defendant's motion for summary judgment is now pending before the court.[4]

## II

The first ground for defendant's motion is that plaintiff failed to file his EEOC

1. The date of the discriminatory act at issue is the date plaintiff was notified that he would be terminated. *See generally Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

2. Under Illinois law, proceedings before the IDHR are not commenced until the complainant files a written charge under oath or affir-

mation. *See* Ill.Rev.Stat. ch. 68, § 7–102(A) (1981).

3. This court's jurisdiction rests on 29 U.S.C. § 626(c)(1) (Supp. II 1978) and 28 U.S.C. § 1331 (Supp. IV 1980).

4. The record does not reveal what became of plaintiff's EEOC charge.

charge in a timely manner. Defendant contends that the ADEA requires plaintiff to file his EEOC charge within 300 days of the alleged discrimination at issue and that he failed to do so. In order to evaluate defendant's position the procedural prerequisites to suit contained in the ADEA must be examined.

### A

The general rule of timeliness contained in the ADEA is found in § 7(d) of the Act, 29 U.S.C. § 626(d) (Supp. II 1978).[5]

No civil action may be commenced by an individual under this section until 60 days after a charge has been filed with the Secretary [of Labor]. Such charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Section 14 of the ADEA, 29 U.S.C. § 633 (1976), in turn provides,

(a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supercede any State action.

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided,* That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

In *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court construed the analogous provisions of Title VII of the Civil Rights Act of 1964, which provide that a charge of employment discrimination prohibited by Title VII be filed with the EEOC within 180 days of the alleged discriminatory practice or within 300 days in a state which prohibits such practices. In these "deferral states," the statute provides that a charge may not be filed with the EEOC until at least sixty days after the complainant has commenced proceedings under state law.[6] In *Mohasco,*

---

5. The functions assigned to the Secretary of Labor by the ADEA have since been transferred to the EEOC.

6.    (c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under ... this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

the plaintiff filed charges with the EEOC and the state deferral agency 291 days after the alleged unlawful employment practice. The Court first held that plaintiff had satisfied the deferral requirement. It noted that Title VII requires only that a complainant initially institute proceedings under state law in order to gain the benefit of the 300 day extended period for filing charges with the EEOC. By filing with the state agency on the 291st day, plaintiff had satisfied this requirement. *See* 447 U.S. at 815–17, 100 S.Ct. at 2492.[7]

The Court then turned to the question whether plaintiff's EEOC filing had been timely.

> The answer is supplied by subsection (c), which imposes a special requirement for cases arising in deferral States: "no charge may be filed under subsection [ (b) ] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have earlier been terminated . . . ." Thus, in terms, the statute prohibited the EEOC from allowing the charge to be filed on the date [plaintiff commenced state proceedings]. Although, as the Court held in *Love v. Pullman Co.,* [ ] it was proper for the EEOC to hold [plaintiff]'s "complaint in 'suspended animation,' *automatically filing it upon termination of the State proceedings,*" that means that the charge was filed on the 351st day, not the 291st. By that time, however, the 300-day period

had run and the filing was therefore untimely.

447 U.S. at 817, 100 S.Ct. at 2492 (first brackets and emphasis in original) (footnote and citation omitted) (quoting 42 U.S.C. § 2000e–5(c) (1976) and *Love v. Pullman Co.,* 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972)). Since *Mohasco* construes the statute to prohibit filing with the EEOC until at least sixty days after filing with the state deferral agency, its practical effect is to require a Title VII complainant to file charges with the state agency within 240 days of the alleged unlawful employment practice, in order to ensure that his or her EEOC charge will be timely filed. *See* 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16. This result was required in order to effectuate the congressional purpose in creating different timeliness rules for deferral states.

> The [legislative] history identifies only one reason for treating workers in deferral States differently from workers in other States: to give state agencies an opportunity to redress the evil at which federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated. The statutory plan was not designed to give the worker in a deferral State the option of choosing between his state remedy and his federal remedy, nor indeed simply to allow him additional time in which to obtain state relief. Had that been the plan, a simple statute prescribing a 90-day period in

---

(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment prac-

tice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency. 42 U.S.C. § 2000e–5(c) & (e) (1976). Sections 7(d) and 14(b) of the ADEA are derived in large part from this statute.

7. Actually, plaintiff had "instituted" proceedings with the state deferral agency by sending written charges to the EEOC, which it referred to the state agency. However, the Court had approved this as a method of instituting proceedings under state law in *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

non-deferral States and a 210-day period in deferral States would have served the legislative purpose. Instead, Congress chose to prohibit the filing of any federal charge until after State proceedings had been completed or until 60 days had passed, whichever came sooner.

447 U.S. at 821, 100 S.Ct. at 2494 (footnote omitted).

## B

■ Prior to *Mohasco,* a number of courts had held that the ADEA required a complainant to commence proceedings under state law in a deferral state within 180 days of the alleged discriminatory employment practice, reasoning that Congress could not have intended that ADEA plaintiffs in deferral states have more time to file initial charges than plaintiffs in nondeferral states, who must file charges with the EEOC within 180 days. *See Ewald v. Great Atlantic & Pacific Tea Co.,* 620 F.2d 1183, 1186–87 (6th Cir.), *vacated,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980); *Ciccone v. Textron, Inc.,* 616 F.2d 1216 (1st Cir.), *vacated,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980); *Gabriele v. Chrysler Corp.,* 573 F.2d 949, 955 (6th Cir.1978), *vacated,* 442 U.S. 908, 99 S.Ct. 2819, 60 L.Ed.2d 273 (1979); *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 194 (3d Cir. 1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). *But see Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1977); *Paxton v. Lanvin-Charles of the Ritz, Inc.,* 434 F.Supp. 612 (S.D.N.Y.1977).

*Mohasco* undermined this approach.[8] *Mohasco* held that a Title VII plaintiff need only comply with the literal terms of the statute and commence proceedings under state law prior to filing with the EEOC, even though this gives Title VII complainants more time to file initial charges in deferral states than they would receive in nondeferral states. Like Title VII, the ADEA contains no requirement that state proceedings commence within 180 days or any other particular time period; under the rationale of *Mohasco,* an ADEA complainant need only comply with the literal terms of the statute and commence proceedings under state law at some point prior to filing suit.[9] Every post-*Mohasco* court to consider the question has concluded that state proceedings need not be commenced within 180 days, and that the statute only requires a state filing at some point prior to seeking a judicial remedy under the ADEA. *See Aronsen v. Crown Zellerbach,* 662 F.2d 584 (9th Cir.1981); *Ciccone v. Textron, Inc.,* 651 F.2d 1 (1st Cir.) (per curiam), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981); *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131–32 (2d Cir.1981); *Davis v. Calgon Corp.,* 627 F.2d 674 (3d Cir.1980) (per curiam), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981); *Avakian v. Trinity Memorial Hospital of Cudahy, Inc.,* 514 F.Supp. 1297, 1298 (E.D.Wis.1981). We agree, and hold that the ADEA contains no time requirement for the commencement of proceedings under state law. Accordingly, plaintiff's commencement of proceedings before the IDHR was timely.[10]

8. The impact of *Mohasco* on the ADEA is demonstrated by the Supreme Court's decision to vacate two cases adopting the 180-day rule for state filings under the ADEA for reconsideration in light of *Mohasco. See Ewald v. Great Atlantic & Pacific Tea Co.,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980); *Ciccone v. Textron, Inc.,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980). In *Mohasco* itself, the Court cited one decision adopting the 180 day rule under the ADEA with evident disapproval. *See* 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16.

9. The ADEA is slightly different than Title VII, however, in that it requires only that proceedings be commenced under state law prior to the filing of a lawsuit, while Title VII requires a state filing prior to filing charges with the EEOC. This difference between the statutes will be discussed at greater length below. For present purposes, it is sufficient to observe that both statutes contain no provision for the timeliness of a state filing, thereby providing no justification for the imposition of a 180-day rule in deferral states.

10. Thus, we hold that an ADEA plaintiff need only comply with the literal terms of the statute by commencing proceedings under state law in deferral states prior to filing suit under the ADEA, and waiting until state proceedings have been terminated or sixty days have passed.

## C

Perhaps anticipating our holding as to the timeliness of plaintiff's state filing, defendant also argues that plaintiff's filing with the EEOC was untimely. Defendant argues that if the first holding of *Mohasco,* that a Title VII complainant need not file with a state deferral agency within 180 days of the discriminatory practice under challenge, is applied to the ADEA, then the second holding, that a charge may not be filed with the EEOC until at least sixty days after filing with the deferral agency, should also be applied. If it is, defendant argues, then the fact that plaintiff commenced proceedings with the IDHR 245 days after the discrimination at issue means that plaintiff could not file with the EEOC until at least 305 days after the alleged unlawful employment practice. If that were the case, plaintiff's EEOC filing would have been untimely. As defendant correctly points out, most of the cases cited above which concluded that *Mohasco*'s rejection of a 180-day rule applies to the ADEA have not reached the question whether *Mohasco*'s second holding should likewise be applied to the ADEA. Thus, defendant asks us to decide a somewhat novel question.[11]

Defendant's position is superficially appealing in that it requires us only to completely apply *Mohasco* to the ADEA. However, defendant overlooks a crucial difference between Title VII and the ADEA. Title VII provides that "no charge shall be filed" with the EEOC until sixty days after state proceedings have been commenced. *See* note 6, *supra.* *Mohasco* simply con-

strued the statute to mean what it says. The ADEA, in contrast, does not quite say the same thing. Section 14(b) does not say that "no charge shall be filed" for sixty days, but rather that "no suit may be brought" for sixty days after state proceedings have commenced. The statute does not prohibit filing a charge with the EEOC within 60 days of the commencement of state proceedings, or even prior to the commencement of state proceedings. It only prohibits filing a lawsuit within sixty days. Every court to construe the statute has concluded that it means what it says, that only the filing of a lawsuit is prohibited within sixty days of the commencement of state proceedings. *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 590 n. 9 (9th Cir. 1981); *Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221, 1227–28 (3d Cir. 1978) (en banc); *Gabriele v. Chrysler Corp.,* 573 F.2d 949, 954 (6th Cir.1978); *vacated,* 442 U.S. 908, 99 S.Ct. 2819, 60 L.Ed.2d 273 (1980); *Avakian v. Trinity Memorial Hospital of Cudahy, Inc.,* 514 F.Supp. 1297, 1298–99 (E.D.Wis.1981); *Bertsch v. Ford Motor Co.,* 415 F.Supp. 619, 623 n. 8 (E.D.Mich. 1976) (dictum). *See also Goodman v. Heublein, Inc.,* 645 F.2d 127, 132 (2d Cir.1981) (dictum); Comment, *Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act,* 44 U.Chi.L. Rev. 457, 478–79 (1977).[12] The legislative history of § 14(b) also indicates that it should be construed to mean what it says. *See* House Rep. No. 805, 90th Cong., 1st Sess. 6 (1967), *reprinted in* 1967 U.S.Code Cong. & Ad.News 2213, 2218–19; Sen.Rep. No. 723, 90th Cong., 1st Sess. 6 (1967).[13]

---

**11.** The parties have not cited any case which has reached this question. Our own research has disclosed only two cases on point, both of which reject defendant's position, largely for the same reasons we reject it below. *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 590 n. 9 (9th Cir.1981); *Avakian v. Trinity Memorial Hosp. of Cudahy, Inc.,* 514 F.Supp. 1297, 1298–99 (E.D.Wis.1981).

**12.** This conclusion is also implicit in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), where the Court stated that ADEA complainants may file charges with the EEOC and state deferral agencies simultaneously. *See id.* at 756–57, 99 S.Ct.

at 2071 (dictum). There, the Court permitted an ADEA suit to stand although the plaintiff had not filed a complaint with the state deferral agency at the time he filed his federal lawsuit, holding that the plaintiff could comply with the ADEA by filing a state charge even after he had initiated his ADEA lawsuit, *see id.* at 764–65, 99 S.Ct. at 2075, though it stayed the suit for sixty days, *id.*

**13.** The reason for this difference between the ADEA and Title VII is to reduce the delay incurred when a complainant must go through two sets of administrative processes prior to filing his or her federal lawsuit. "The ADEA permits concurrent rather than sequential state

We conclude that the statute should be construed to mean what it says, and hold that the ADEA does not prohibit the filing of a charge of age discrimination with the EEOC within 60 days after proceedings have been commenced under state law in a deferral state. Accordingly, plaintiff was able to file his complaint with the EEOC before the 300-day limit contained in § 7(d)(2) had run.[14]

### III

■ The second ground for defendant's motion is plaintiff's alleged noncooperation with IDHR. Defendant argues that plaintiff's failure to attend the IDHR conference or to cooperate with the investigator should preclude his federal lawsuit. Defendant concedes, as it must, that § 14(b) of the ADEA does not explicitly require cooperation with a deferral agency, but argues that such a requirement should be read into the statute. Since the section is intended to give state agencies an opportunity to resolve discrimination disputes, *e.g., Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), Congress must have intended that the opportunity which state agencies receive be meaningful. Noncooperation with the deferral agency precludes meaningful action at the state level and undermines the congressional goal. Therefore, noncooperation should be considered constructive noncompliance with § 14(b), defendant argues.[15]

### A

Defendant asks us to decide the extent to which § 14(b) requires an ADEA complainant in a deferral state to cooperate with the state agency and hence meaningfully "exhaust" his or her state remedy prior to filing suit under the Act. The starting point for our analysis, as with any question of statutory construction,

> "must be the language employed by Congress," and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."

*American Tobacco Co. v. Patterson,* 456 U.S. 63, ——, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citations omitted) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962); *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The plain language of § 14(b) does not support defendant's construction. Nowhere does it specify any requirement that an ADEA complainant cooperate with state agencies or "exhaust" state remedies. "By

---

and federal administrative jurisdiction in order to expedite the processing of age-discrimination claims. The premise for this difference is that the delay inherent in sequential jurisdiction is particularly prejudicial to the rights of 'older citizens to whom, by definition, relatively few productive years are left.'" *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 757, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979) (quoting 113 Cong.Rec. 7076 (1967) (remarks of Sen. Javits)).

**14.** In light of our view of the case, it is unnecessary for us to decide whether plaintiff actually commenced proceedings on the date he sent his charge, by registered mail, to the IDHR, 235 days after the discriminatory act in question, or whether state proceedings were not commenced until plaintiff signed his formal written charge and commenced proceedings under state law ten days later.

**15.** There is some authority supporting defendant's construction of the ADEA. *See Mistretta v. Sandia Corp.,* 639 F.2d 588, 599 (10th Cir. 1980) (Barrett, J., dissenting); *Collins v. Manufacturers Hanover Trust Co.,* 542 F.Supp. 663, 668 (S.D.N.Y.1982) (dictum); *Albano v. General Adjustment Bureau,* 478 F.Supp. 1209, 1214–15 (S.D.N.Y.1979), aff'd mem., 622 F.2d 572 (2d Cir.1980). There is also some authority for defendant's approach under the analogous provisions of Title VII. *See Jordan v. United States,* 522 F.2d 1128 (8th Cir.1975); *Dubois v. Packard Bell Corp.,* 470 F.2d 973 (10th Cir. 1973); *Shudtz v. Dean Witter & Co.,* 418 F.Supp. 14, 17 (S.D.N.Y.1976). *See also Williams v. Department of the Navy,* 472 F.Supp. 747, 751–52 (E.D.Pa.1979); *Scott v. University of Delaware,* 385 F.Supp. 937, 943 (D.Del.1974) (dictum). As noted below, however, there is also authority to the contrary under both statutes.

its terms, then, the section requires only that state proceedings be commenced 60 days before federal litigation is instituted; besides commencement no other obligation is placed upon the ADEA grievant." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 759, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979). The plain language of the statute, as noted by the Supreme Court in *Oscar Mayer,* provides no support for defendant's position.

### B

Examination of the underlying purposes of § 14(b) reinforces the conclusion that it should be construed consistently with its plain meaning. Section 14(b) was not intended to impose any duty on an ADEA complainant to do anything more than commence proceedings under state law. Once that occurred, Congress intended the section to permit *voluntary* conciliation between the parties, it did not intend an ADEA complainant to have to engage in conciliation if he or she did not want to do so. *See* House Rep. No. 805, 90th Cong., 1st Sess. 5 (1967), *reprinted in* 1967 U.S.Code Cong. & Ad.News 2213, 2218; Sen.Rep. No. 723, 90th Cong., 1st Sess. 5 (1967); 118 Cong.Rec. 34,748 (1967) (remarks of Rep. Dent). Because Congress envisioned conciliation under § 14(b) to be voluntary, it is inconsistent with Congressional intent to require an ADEA complainant to engage in mandatory conciliation, thereby exhausting his or her state remedy.

> The Supreme Court has written,
>
> Section 14(b) does not stipulate an exhaustion requirement. The section is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief.

*Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979). The Court, in *Oscar Mayer,* went on to note that the last sentence of § 14(b) also indicates that the section does not contain an exhaustion requirement, in that it states that deferral states can impose no requirements on ADEA complainants that must be satisfied prior to their seeking judicial relief other than requiring a written statement of facts sent by registered mail. *See id.* at 760, 99 S.Ct. at 2073. This is to ensure that states may not impose burdensome requirements which might hinder the ability of ADEA plaintiffs to seek federal relief. *See id.* at 762–63, 99 S.Ct. at 2074. *Oscar Mayer* indicates that the statute is satisfied by nothing more than the commencement of proceedings under state law; state remedies need not be pursued to any significant extent.

Defendant responds by arguing that *Oscar Mayer* dealt only with the case where a state refuses to conciliate an age discrimination dispute. In *Oscar Mayer,* there were no meaningful proceedings at the state level because the ADEA plaintiff had not timely filed his charges under state law. The Court held that the fact that the state might not entertain the charge due to its timeliness rule would not bar plaintiff's federal lawsuit. However, defendant argues, where a state is willing and able to entertain charges, Congress surely did not intend an ADEA plaintiff to be able in effect to bypass state proceedings entirely and make no effort to resolve the dispute at the state level. Defendant overlooks the fact that exactly the same argument was rejected in *Oscar Mayer,* when the Court held that state charges need not be timely under state law in order to preserve a grievant's federal remedy.

The strongest argument against this construction of the statute is that it would permit grievants to avoid state intervention by waiting until the state statute of limitations has expired and then filing federal suit, thus frustrating the intent of Congress that federal litigation be used as a last resort.

No reason suggests itself, however, why an employee would wish to forgo an available state remedy. Prior resort to the state remedy would not impair the availability of the federal remedy, for the two are supplementary, not mutually exclusive. A complainant would save no

time by bypassing the state remedy since the federal court must, in any event, defer to the State for 60 days, and is required to defer no longer.

441 U.S. at 763–64, 99 S.Ct. at 2075. If an ADEA complainant can deliberately bypass state remedies by filing his or her charges after the state statute of limitations has run, frustrating meaningful state review, it is no more offensive to the statutory scheme where he or she frustrates state review through other forms of noncooperation. The rationale of *Oscar Mayer* would remain applicable; there is no reason to believe deliberate bypass of state remedies might become a recurrent problem, and in any event, Congress intended states to have no more than an opportunity to conciliate if the parties desire that. Section 14(b) simply does not permit states to require any more than that ADEA litigants commence proceedings under state law at least sixty days before filing suit.[16] Requiring cooperation of the type plaintiff allegedly denied IDHR would create a procedural hurdle to federal relief not envisioned by Congress and undermine the voluntary approach to state conciliation taken by Congress.[17] We believe state conciliation should remain voluntary; the state must be given the opportunity to attempt conciliation, but whether

the parties want to take advantage of the state's attempt should be up to them.

### C

Even if we were inclined to agree with defendant as a matter of statutory construction, a rule requiring ADEA complainants to cooperate with deferral agencies is fraught with practical difficulties.

First, it would be difficult to determine what kind of "cooperation" a complainant would be obliged to give the agency. Defendant suggests that cooperation must be more than "perfunctory," that it must be "in good faith." This suggested standard seems to be derived from the duty to bargain in good faith with collective bargaining units imposed on employers under § 8(a) and (d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a) & (d) (1976). *See generally Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 209–10, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964); *NLRB v. American National Insurance Co.,* 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952). However, imposing such a duty under the ADEA would be problematic.

Section 14(b) of the ADEA makes it very clear that a state agency cannot prohibit an ADEA plaintiff from abandoning state proceedings and suing in federal court. ADEA

---

**16.** Even defendant's initial premise, that Congress must have intended that truly meaningful conciliation take place at the state level, is open to question. That premise ignores § 14(a) of the ADEA, which

> provides that a federal action filed over sixty days after commencement of the state action must supercede the pending state proceeding. It would be indeed incongruous to attribute an intent to Congress to mandate resort to state proceedings when those proceedings need not be concluded, and would in any event be necessarily superceded by the filing of a federal suit.

*Holliday v. Ketchum, MacLeod & Grove, Inc.,* 584 F.2d 1221, 1227 (3d Cir.1978) (en banc) (emphasis in original) (footnotes omitted). The import of § 14(a) is clear. "As the state is completely divested of jurisdiction once the federal suit has been instituted, it would be wrong to construe the statute as one which looks in any meaningful way to the state for settlement of disputes." *Punch v. Singer Co.,* 463 F.Supp. 450, 453 (S.D.N.Y.1978). *See also*

*Kennedy v. Whitehurst,* 690 F.2d 951, 964 (D.C. Cir.1982).

**17.** It would be especially unwise to require plaintiff to have cooperated with IDHR on the particular facts of this case. The initial IDHR conference was not scheduled until more than sixty days had elapsed since the commencement of state proceedings. Thus, under § 14, plaintiff had the right to file a lawsuit and terminate the state proceedings prior to the scheduled conference and subsequent unanswered phone calls. Under the circumstances, it makes little sense to suggest that plaintiff was under a "duty" to cooperate by attending the conference and returning the calls. Moreover, Illinois law requires that an age discrimination complaint be filed with IDHR within 180 days of the alleged unlawful discriminatory act. *See* Ill.Rev.Stat. ch. 68, § 7–102(A) (1981). Therefore, plaintiff's charges were not timely filed under state law, and accordingly he had no realistic hope of obtaining relief from IDHR and hence little reason to cooperate with its investigation.

plaintiffs have an absolute right to file suit sixty days after commencing state proceedings, and, as the last sentence of § 14(b) and *Oscar Mayer* make clear, there is nothing the state can do to stop them. If an ADEA litigant is determined to have his or her day in federal court, he or she will get it.

■ Thus, Congress explicitly gave ADEA litigants the option not to resolve disputes through bargaining but instead to go to federal court and obtain federal adjudication of the dispute, an alternative not provided by the NLRA, which does not permit the federal government to impose dispute resolution on the parties to a labor dispute. *See, e.g., NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Because an employee has the right to insist on a judicial resolution of his claims under the ADEA, it follows that the employee is under no duty to attempt to bargain at the state level; he can insist on a legal vindication and refuse to bargain away his or her federal civil rights under the ADEA. Defendant does not suggest otherwise. Yet, if an ADEA complainant's "cooperation" need not consist of actually attempting to bargain, the cooperation that defendant would have us insist on would be of only the most formal kind, attending conferences, returning calls, and the like. If that is all that is required, then even defendant's proposal will not achieve its avowed goal of ensuring that *meaningful* conciliation occurs at the state level. Defendant's suggested construction of § 14(b) is inconsistent with its assumption about what it is the statute must ensure, and unlikely to achieve anything of real substance.

Second, defendant's approach will lead to gaping inefficiencies in many cases. As noted above, it is clear that a complainant need not bargain at the state level, but rather may insist on judicial vindication

rather than state conciliation. That being the case, to impose on all complainants a duty to "cooperate" with deferral agencies' conciliation efforts by attending meetings and the like would simply force grievants determined to go to court to engage in subterfuge. The complainant will have to appear to cooperate, all the while concealing his or her actual determination not to bargain about his or her rights. If a complainant has no wish to engage in state conciliation, it makes more sense to permit him or her to make that apparent from the outset so as not to waste the time of all concerned.

Third, accepting defendant's proposed construction of the statute will require courts to adjudicate questions involving the "good faith" of an ADEA plaintiff's cooperation with the deferral agency. Time-consuming and expensive litigation will result, since evidentiary hearings will be necessary to resolve questions of motive and intent. Moreover, ADEA defendants bent on delay will probably be able to make allegations as to the plaintiff's bad faith before the state agency sufficient to require a hearing in almost every case.[18] The burdensome litigation that would result from defendant's approach hardly would comport with the congressional goal of enabling victims of age discrimination to obtain expeditious relief, *see* note 13, *supra,* while consuming the resources of plaintiffs and courts. While we do not agree that "federal courts are drowning in litigation," *Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982), it is true that defendant's proposal would raise the water level.

In sum, we believe that adopting defendant's construction of § 14(b) would not only be unsupported by the language and purpose of the statute, but also would amount to an unwise and problematic exercise in judicial review.

---

18. Many ADEA defendants will believe the only reason they have been haled into federal court is the bad faith of the plaintiff before the state agency, and will honestly accuse the plaintiff of non-cooperation. Other defendants will do so solely for purposes of delay. We

would anticipate that little more than the defendant's affidavit reciting the necessary allegations of bad faith would be required in order to obtain a hearing, and that such hearings might be common even when plaintiffs have fully cooperated with the deferral agency.

**D**

Holding that the kind of cooperation plaintiff allegedly denied IDHR is not required under the ADEA is well-supported by the available authorities. A number of courts have concluded that beyond commencing proceedings under state law and waiting sixty days before filing suit, the ADEA contains no exhaustion requirement. *See Kennedy v. Whitehurst*, 690 F.2d 951, 964 (D.C.Cir.1982); *Gabriele v. Chrysler Corp.*, 573 F.2d 949, 953 (6th Cir.) *vacated*, 442 U.S. 908, 99 S.Ct. 2819, 60 L.Ed.2d 273 (1979); *Goger v. H.K. Porter Co.*, 492 F.2d 13, 15 (3d Cir.1974), *overruled on other grounds, Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221 (3d Cir.1978) (en banc); *Mizrany v. Texas Rehabilitation Commission*, 522 F.Supp. 611, 616 (S.D.Tex. 1981); *Nickel v. Shatterproof Glass Co.*, 424 F.Supp. 884, 887 (E.D.Mich.1976), *aff'd mem.*, 599 F.2d 1055 (6th Cir.1979); *Magalotti v. Ford Motor Co.*, 418 F.Supp. 430 (E.D.Mich.1976). *See also Lombardi v. Margolis Wines & Spirits, Inc.*, 465 F.Supp. 99, 101 (E.D.Pa.1979) ("[U]ntil a claimant has adequately pursued state administrative remedies—by waiting either the requisite 60 days or until the state agency has disposed of the claim—the federal courts are without subject matter jurisdiction over the dispute.").[19]

This holding is also supported by case law under the similar provisions of Title VII, which holds that a Title VII litigant need not exhaust state remedies, but rather must do no more than file state charges and wait the requisite period.[20] *See Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir.1979); *Guse v. J.C. Penney Co.*, 562 F.2d 6, 7–8 (7th Cir.1977); *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir.1976); *Grubbs v. Butz*, 514 F.2d 1323, 1327–28 (D.C.Cir.1975); *Harris v. Ericson*, 457 F.2d 765 (10th Cir. 1972); *Crosslin v. Mountain States & Telegraph Co.*, 422 F.2d 1028, 1031 (9th Cir. 1970), *vacated*, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971); *Lo Re v. Chase Manhattan Corp.*, 431 F.Supp. 189, 194 (S.D.N.Y. 1977); *Ortega v. Construction Union*, 396 F.Supp. 976, 980 (D.Conn.1975); *Hecht v. Cooperative for American Relief Everywhere, Inc.*, 351 F.Supp. 305, 307–09 (S.D.N.Y.1972); 2 A. Larson & L. Larson, Employment Discrimination § 49.60 (1982); Note, *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1101, 1212 (1971). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) ("[W]e will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.").[21] This view of the statute is also shared by the EEOC, which has taken the position that a Title VII litigant's noncooperation with EEOC conciliation is not a bar to a subsequent lawsuit under Title VII. *See* 29 C.F.R. §§ 1601.19(c), 1601.28(b)(3)(i) (1982). *See also Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir.1979).[22] Thus, there is ample

---

**19.** For contrary authority, *see* note 15, *supra*.

**20.** If anything, the argument for requiring plaintiff to attempt meaningful conciliation at the state level is stronger under Title VII than under the ADEA, since Title VII contains nothing analogous to § 14(a) of the ADEA, and therefore seems to anticipate lengthier and hence more meaningful efforts at dispute resolution on the state level.

**21.** The holding is also supported by the line of cases stating that actual attempts at conciliation by the EEOC are not a prerequisite to suit under Title VII since the statute requires no more than that the EEOC be given an opportunity to conciliate. *See Richerson v. Jones*, 572 F.2d 89, 97–98 (3d Cir.1978); *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir.1976);

*Pacific Maritime Ass'n v. Quinn*, 465 F.2d 108 (9th Cir.1972); *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161 (5th Cir.1971); *Miller v. International Paper Co.*, 408 F.2d 283, 288–91 (5th Cir.1969); *Dent v. St. Louis-San Francisco R. Co.*, 406 F.2d 399 (5th Cir.1969), *cert. denied*, 403 U.S. 912, 91 S.Ct. 2219, 29 L.Ed.2d 689 (1971); *Johnson v. Seaboard Air Line R. Co.*, 405 F.2d 645 (4th Cir.1968), *cert. denied*, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 360–61 (7th Cir.1968). *See also Pastrana v. Federal Mogul Corp.*, 683 F.2d 236, 239 (7th Cir.1982).

**22.** The EEOC's interpretation is entitled to "great deference." *Oscar Mayer*, 441 U.S. at 761, 99 S.Ct. at 2074 (citing *Griggs v. Duke*

authority for holding that the ADEA requires only that a litigant give the state deferral agency a sixty-day opportunity to attempt conciliation, but not that the litigant actively cooperate with the agency.[23]

## IV

We hold that §§ 7(d) and 14 of the ADEA mean what they say, no more and no less. A litigant complies with these sections by commencing proceedings under state law, and then waiting sixty days or until state proceedings have terminated to file suit under the Act. By doing this, the litigant complies with the letter of the statute, and has preserved its underlying goals. He or she need not file charges with the deferral agency within 240 days of the discriminatory act, nor worry about whether he or she is "cooperating in good faith" with the deferral agency. If the litigant wishes to pursue the opportunity Congress has provided for of voluntary conciliation at the state level, he or she may do so; but conciliation under the ADEA is voluntary, a litigant is under no obligation to pursue it.

Defendant's motion for summary judgment is denied. Defendant is ordered to answer the complaint within 14 days. Discovery and trial in accordance with schedule entered this date.

---

Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971)).

**23.** However, a litigant does have to do this much. Thus, for example, a litigant does not comply with the statute where he or she does not give the state at least sixty days' opportunity to effect conciliation by voluntarily terminating proceedings under state law before sixty days have passed. *See Albano v. General Adjustment Bureau,* 478 F.Supp. 1209, 1214 (S.D. N.Y.1979), *aff'd mem.,* 622 F.2d 572 (2d Cir. 1980); *Lombardi v. Margolis Wines & Spirits Co.,* 465 F.Supp. 99 (E.D.Pa.1979). *See also Crosslin v. Mountain States Tel. & Tel. Co.,* 422 F.2d 1028, 1030–32 (9th Cir.1979), *vacated,* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971).