Forrest N. FUGATE, Plaintiff,

v.

ALLIED CORPORATION, Defendant.

No. 83 C 6071.

United States District Court,
N.D. Illinois, E.D.

March 20, 1984.

Jonathan D. Moses, Haley, Bader & Potts, Chicago, Ill., for plaintiff.

Lawrence C. DiNardo, Charles C. Jackson, Jill A. Goldy, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The case at bar was brought by plaintiff, Forrest N. Fugate against his former employer, defendant Allied Corporation, challenging his termination of employment under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Before the Court is the defendant's Motion for Summary Judgment. For the reasons stated herein, Summary Judgment is denied.

The undisputed facts are as follows: Fugate was employed by the Bunker Ramo Corporation for 22 years when, in July, 1981, it was acquired by defendant Allied. At the time of the acquisition, Fugate was employed by Bunker Ramo as an attorney at their Oak Brook, Illinois headquarters.

Following the acquisition, Bunker Ramo was reorganized and its law department disbanded. Prior to the dissolution, the department had been comprised of eight individuals including seven attorneys and one individual, the Director of Patents, who was not an attorney but was licensed to practice before the U.S. Patent Office. Two of the attorneys were employed at Bunker Ramo's Trumbull, Connecticut offices.

As a result of the reorganization, the three oldest individuals in the Bunker Ramo law department were left without jobs. These included plaintiff, who was 57 years old at the time of the reorganization, another attorney, Nicholas Camasto, who was 51, and the Director of Patents, Fred Arbuckle, who at 59 was the oldest member of the department.

From 1977 until March, 1981, plaintiff held the title of Senior Counsel and Assistant Secretary. In this capacity, plaintiff was assigned to the company's Electronics Systems Division (ESD). Roughly 25 percent of his time was devoted to his ESD duties while 50 percent of his time went to his corporate secretary duties. The remaining 25 percent was spent monitoring legislative developments relevant to the corporation.

In March, 1981, in addition to his previous duties, plaintiff assumed the role of Division Counsel for Amphenol North America, a Bunker Ramo division, on a temporary basis. However, plaintiff admits he never sought the position on a permanent basis.

Allied acquired Bunker Ramo on July 31, 1981. At that time, Kevin Salisbury of Allied became responsible for integrating the Bunker Ramo legal department into Allied. To this end, Salisbury consulted with David Fewkes, Bunker Ramo's general counsel. Thereafter, in November, 1981, the Amphenol Divisional Counsel position, which plaintiff had temporarily filled, was permanently filled by Gary Grolle, a 37-year-old attorney who had been counsel to Bunker Ramo's Borg Textile Division. Following this appointment, plaintiff assumed Grolle's former duties along with the duties he had previously been assigned.

By February, 1982, it had been decided that Bunker Ramo's operating divisions would be realigned into two new Allied Companies, Allied Electronics Components Company (AECC), and Allied Information Systems Company (AISC). As part of that reorganization, the Amphenol and International Divisions were to be merged into a new Amphenol Division which was to be a part of AECC. The Electronics Systems Division for which plaintiff was counsel was merged into AISC. Under this plan, the Oak Brook Bunker Ramo headquarters were to be closed on March 31, 1982. Those individuals who did not secure new positions with Allied were to be terminated as of that date.

Of the Bunker Ramo attorneys who were subsequently employed by Allied, two, Robert Predan, age 49, and Gary Grolle, age 37, were engaged in the new Amphenol Division. Predan was assigned the international work on Fewkes' recommendation and based on the fact that he had been responsible for Bunker Ramo's Amphenol International Division since 1977.[1] Grolle, who up to that time had handled Amphenol's domestic work, was retained in that capacity with the new Amphenol Division, notwithstanding that, by Salisbury's own admission, plaintiff was considered for the position. In addition, James Brooks, age 37, and James Clayton, age 34, attorneys who also had worked for Bunker Ramo, were able to secure employment with Allied, Brooks with the company's Information Systems Company, and Clayton with its Health and Scientific Company. Finally, David Fewkes, upon whose recommendations many of the reassignments were made, was offered a position as general

1. Prior to 1977, plaintiff was assigned to the International Division. He was reassigned, however, after he had expressed that he was unhappy with his work. Simultaneously, David Parry, the International Division head, also informed Fewkes that he was displeased with plaintiff's international work.

counsel of AESC, a position which he declined.

After plaintiff was notified of his termination, but before his severance pay was discontinued, Allied hired five new attorneys for various positions within the organization. Each of these attorneys was hired as a general attorney rather than as a patent attorney, and each is younger than plaintiff.

In support of its motion for summary judgment, defendant argues that the reorganization was an even-handed one which, coincidentally, resulted in the terminations of the three oldest law department members. However, plaintiff contends that he was treated differently with respect to available jobs and that there exists direct evidence of discriminatory animus. Defendant also argues that plaintiff's claim is procedurally barred.

### DISCUSSION

#### I. *The Merits of the ADEA Claim*

■ Defendant first argues that there is no issue of fact present. Under Section 4(a) of the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). In order to succeed under the ADEA, plaintiff must first establish a prima facie case of discrimination. If he is successful, the defendant must articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Plaintiff may rebut this contention by showing that this putative justification was merely a pretext for discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *E.E.O.C. v. United Air Lines*, 544 F.Supp. 1187, 1217 (S.D.N.Y.1982).

**2.** *See* 29 U.S.C. § 631(a).

■ In proving a prima facie case, the plaintiff must prove by a preponderance of the evidence that he applied for a position for which he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. To do so, plaintiff must demonstrate that (1) he was a member of the protected age group of individuals between forty and seventy years of age;[2] (2) he applied for but did not receive the position in question; (3) another person of similar qualifications, generally outside the protected age group, received the particular position; and (4) the claimant was qualified to fill the position he sought. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *E.E.O.C. v. Trans World Airlines*, 544 F.Supp. at 1218.

■ In the case at bar, the Court is faced not with a pure replacement situation, but with a situation akin to a reduction-in-force. In such circumstances, courts have recognized that the *McDonnell Douglas* elements may not be entirely applicable and do not constitute an immutable definition of a prima facie case. *Baldwin v. Sears, Roebuck and Co.*, 667 F.2d 458, 461 (5th Cir.1982). Thus, in the case at bar, in order to prove a prima facie case, plaintiff should not be required to prove that he applied for but failed to receive a specific particular position but that he was qualified to assume but did not receive another position. *See Baldwin, supra; E.E.O.C. v. Trans World Airlines*, 544 F.Supp. 1187, 1218 (S.D.N.Y.1982).

■ Courts have also noted that the individual who replaces the claimant or who, in the case of a reduction-in-force, receives a position for which the claimant was qualified but did not receive need not necessarily be under forty years of age. As the Court noted in *Trans World Airlines*, "There is no logical reason why an inference of discrimination cannot be drawn when the replacement is younger but not outside the protected group, particularly in view of the fact that the protected group

spans two generations." *Id.* at 1218. Thus the fact that two of the attorneys who received offers to remain with Allied were over forty years of age does not foreclose plaintiff from proving a prima facie case as these two individuals were younger than the plaintiff in the case at bar.

In sum, to prove a prima facie case in the case at bar, plaintiff must demonstrate (1) that he was a member of the protected age group of individuals between forty and seventy years of age; (2) that in a time of reduction-in-force or reorganization he applied for but did not receive another position; (3) that another person of similar qualifications who is younger than plaintiff received another position; and (4) that the plaintiff was qualified to fill such other position. In the opinion of this Court, plaintiff has successfully shouldered this burden.

It is undisputed that plaintiff, at the age of 57, is within the protected age group. Similarly, it is not disputed that plaintiff sought to be placed somewhere in the Allied organization when the reorganization took place and that he did not receive such placement. Plaintiff has also proved that other individuals of similar qualifications who were younger than plaintiff received positions or offers of positions with Allied. Specifically, Predan, Grolle, Brooks and Clayton, all of whom are younger than plaintiff, were found other positions with Allied, while Fewkes, who also is younger than plaintiff, was offered but refused an Allied position. Moreover, five other younger general attorneys were hired by defendant between the acquisition of Bunker Ramo by Allied and the cessation of plaintiff's termination pay. Finally, it appears that plaintiff has showed that given his broad range of experience with Bunker Ramo and other organizations, plaintiff was qualified for at least some of the positions which were ultimately awarded to his younger Bunker Ramo counterparts or to the general attorneys hired from the outside.

In response, defendant argues that as a result of the reorganization, plaintiff's position simply "disappeared" and that the placement or nonplacement of Bunker Ramo attorneys was the result of an even-handed process. Specifically, defendant argues that plaintiff was not qualified for the position offered to Fewkes of General Counsel of the Allied Electronics Components Company. In addition, defendant contends that the positions ultimately awarded to Predan and Grolle involved the duties which these two individuals had undertaken in their individual respective capacities with Bunker Ramo. Defendant also contends that plaintiff is distinct from Brooks and Clayton because neither of these two individuals had ever worked in Oak Brook and because the positions the two assumed following the reorganization in the Information Systems Division were the same positions they had occupied with Bunker Ramo prior to reorganization.[3] Finally, defendant argues that the plaintiff has failed to identify specific positions for which he was qualified which were open at the time of his termination for which he was not considered.

As to certain of the positions discussed above, it appears that defendant's reasons for retaining certain of the Bunker Ramo attorneys in positions with Allied involved legitimate business judgment. Specifically, plaintiff does not contend he was qualified for the general counsel position which was offered to Fewkes. Additionally, each Allied position ultimately awarded to the remaining Bunker Ramo attorneys who remained with Allied was related to the positions which the individual attorneys occupied with the former company. However, the fact that five younger attorneys were hired during the period immediately following discharge raises a genuine issue of fact concerning defendant's reasons for not engaging plaintiff to fill one of the positions.

---

**3.** More than a year after the decision to terminate plaintiff was made, it was decided that Clayton was no longer needed in the Information Systems Division. Clayton was subsequently transferred to a position in Allied's Health and Scientific Company.

The positions which the five younger attorneys filled were those of general attorneys in various departments of Allied. Given plaintiff's broad experience, the Court concludes that he was qualified to at least be considered for one of the positions.

It is apparently the policy of Allied, when openings arise, to give priority to its own employees whose positions have disappeared. Thus, some months after plaintiff was terminated, the position of James Clayton in the Information Systems Division also "disappeared." Unlike plaintiff, however, Clayton was requested to transfer to a different job in an entirely different division. Similarly, when David Fewkes' position with Bunker Ramo "disappeared," he was offered a different position with Allied. While plaintiff does not contend that he should have been considered for the position which Fewkes was ultimately offered, he does contend that he should have been afforded the same treatment in that an effort should have been made on the part of defendant to place plaintiff elsewhere in the company.

In further support of his case, plaintiff notes that in 1981, the job description of one attorney, Dennis R. Marshall, was changed to reflect Marshall's new function as a securities lawyer. Despite the admission of Allied's Vice President and Associate General Counsel, Kevin Salisbury, the individual charged with reorganizing the Bunker Ramo law department, that plaintiff's expertise was in the area of securities law, plaintiff was never notified of the need for a securities lawyer and apparently was never considered for the position.

Finally, plaintiff has set out certain evidence which would tend to indicate defendant's concern for the age of its employees. While no evidence directly implicating that defendant was specifically concerned about plaintiff's age is tendered, the general concern regarding the age of the law department employees is evident. Thus plaintiff testified in his deposition that he heard Harold Doherty, administrator of the Allied law department, state to David Fewkes, with regard to Frederick Arbuckle, the Bunker Ramo Director of Patents, "I won't move him back east [to Allied's east coast offices] because he's too close to retirement."

In light of the foregoing, it is clear that a genuine issue of fact exists as to whether the decision not to employ plaintiff in the Allied organization was based upon his age. For that reason, defendant's motion for summary judgment must be denied.

## II. The Procedural Claim

[6] Defendant also argues that plaintiff's claim is procedurally barred. It argues that because plaintiff may have filed his charge of discrimination with the Illinois Department of Human Rights more than 180 days after the discriminatory act, the action must be dismissed. While defendant relies upon a number of district court cases indicating the correctness of its position, it is clear that under *Mohasco v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), a plaintiff need only file the state charge prior to instituting suit. The ADEA requires only that the state charge be filed 60 days prior to instituting suit. 29 U.S.C. § 633(b).

As Judge Marshall noted recently in *Curto v. Sears Roebuck & Co.*, 552 F.Supp. 891, 895 (N.D.Ill.1982):

> Every post-*Mohasco* court to consider the question has concluded that state proceedings need not be commenced within 180 days, and that the statute only requires a state filing at some point prior to seeking a judicial remedy under ADEA. [emphasis added] [Citing] *Aronsen v. Crown-Zellerbach*, 662 F.2d 584 (9th Cir.1981); *Ciccone v. Textron, Inc.*, 651 F.2d 1 (1st Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981) [opinion after remand]; *Goodman v. Heublein, Inc.*, 645 F.2d 127 (2d Cir. 1981); *Davis v. Calgon Corp.*, 627 F.2d 674 (3d Cir.1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

In the case at bar, defendant concedes that plaintiff filed his lawsuit more than 60 days prior to the institution of the instant suit. The ADEA requires no more.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is denied.

IT IS SO ORDERED.